**HUNT PRODUCTION CO. et al. v. DICKERSON et al.**

No. 5393.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 27, 1939.

Rehearing Denied Jan. 4, 1940.

McEntire & Shank, of Dallas, and L. L. James, of Tyler, for appellants.

H. H. Wellborn and Frank C. Bolton, both of Henderson, and Rogers & Scott, of Waco, for appellees.

HALL, Justice.

In July, 1935, appellee C. N. Dickerson, individually and as community administrator of the estate of his wife, Cora L. Dickerson, deceased, filed this suit in the District Court of Rusk County, in form of trespass to try title against Hunt Production Company, H. L. Hunt, individually and as trustee for undisclosed principals, and numerous other persons not necessary to mention, for title and possession of "about 148" acres of land, a part of the Dan Clark Survey. Appellee also asserted title to said land under the 3, 5, 10 and 25 years' statutes of limitation. Appellants, Hunt Production Company, H. L. Hunt, individually and as trustee, answered by general demurrer, general denial, and plea of not guilty. And in response to this pleading of appellants, appellee Dickerson filed what he termed his first "supplemental petition" in which he alleged in part: "That if the defendants, or either of them, and particularly defendant Hunt Production Company, ever had any oil or gas lease on the land and premises described in plaintiff's original petition filed herein, which is not admitted, the same has become forfeited, abandoned, void and of no further force or effect, and judgment cancelling

the same should be entered by this court for the following good and sufficient reasons:" (a) Because Hunt Production Company has failed and refused for many years to develop said property for oil and gas "as required by their implied obligations so to do;" (b) that H. L. Hunt, Trustee, individually and as President of Hunt Production Company, advised appellee Dickerson that appellants named above had abandoned said land for oil and gas purposes and disclaimed any interest therein; (c) that Roy Lee, Secretary and Treasurer of said Hunt Production Company, advised appellee, Dickerson, that his company had abandoned said land and refused to develop same for oil and gas, and also by his acts and conduct "openly and notoriously" abandoned said land by refusing on behalf of his company to render same for taxes; (d) that Hunt Production Company acting by and through its agent H. B. Harder abandoned said land "that all of said acts and conduct took place during the years 1934 and 1935, and said defendants (appellants) continued their acts of abandonment up to and including July, 1935, on which said date, after complete and final abandonment, the defendant (appellant) Hunt Production Company undertook to assert a new claim to said land, the nature of which is to this plaintiff (Dickerson) unknown, but which this plaintiff says is not a valid claim but is unlawful." Then follows a plea of estoppel based upon all the alleged acts of abandonment together with the statements of Hunt, Lee and Harder, allegedly made to appellee Dickerson and one Perry Allen, wherein it is alleged: "That the defendants, and each of them, and particularly the defendant Hunt Production Company, are estopped as a matter of law, from claiming any rights in or to said land and premises, or any part thereof, or any interest in or to the oil or gas of said land, or any part thereof, or any right of possession to any part of said land, or any right of ingress or egress over said land, or any part thereof."

It was alleged further that appellee Dickerson relying upon the acts of abandonment of the Hunt Production Company, together with the statements made by its agents, Hunt, Lee and Harder, did on May 15, 1935, lease the premises here in controversy to appellee Perry Allen for the development of same for oil and gas. And for the same reasons the appellee Allen accepted the said oil and gas lease and obligated himself to carry out the terms and

provisions thereof "and (Allen) believing all of said acts, instruments, statements and conduct to be genuine, entered into a drilling contract with drillers to sink oil wells on said land, and has thereby bound and obligated himself to penalties, damages and claims which will exceed $5,000, all of which will be a total loss to him in event defendants, or either of them, is permitted to assert any claim to said land or any part thereof. * * *" In this pleading damages were alleged at $30,000 instead of $5,000 as in appellees' amended petition. Perry Allen intervened and adopted the pleadings of appellee Dickerson, claiming the ⅞ leasehold interest in said land under a lease from him.

In answer to this supplemental petition appellants filed their supplemental answer consisting in part of a general demurrer, and the special exception to the effect that "the matters and allegations therein contained do not properly belong in a supplemental petition, but should be properly and lawfully alleged in an amended 'petition." To the merits it was alleged that appellants were the legal owners of an oil and gas lease covering the land in controversy as well as other lands, assigned to them by C. M. Joiner, Trustee, as one indivisible lease contract, and that on land described in said lease contract six producing oil wells had been drilled and completed to production, before the filing of this suit, at a total expenditure of $100,000. It was alleged further that on October 2, 1936, the lease covering the land in controversy, together with the land on which the six wells were located, was assigned to P. G. Lake, Inc., and that this company has, since said assignment, expended $25,000 in developing same by completing two additional producing oil wells thereon, and but for the pendency of this suit would continue to develop said land for oil in accordance with business prudence; that the land in controversy "is a part of the land covered by the oil and gas lease executed by Dickerson and wife to C. M. Joiner, Trustee, on the 30th day of March, 1927," which lease was ratified by an instrument in writing signed by Dickerson and wife, in favor of Hunt Production Company on February 25, 1933. That said lease has been developed in a "prudent and reasonable manner"—there being six oil wells (eight at time of trial) on the land covered by the lease. That before and since the filing of this suit appellees have received and collected the royalties due them from said oil wells, and are therefore estopped to declare a forfeiture of said oil and gas lease. This supplemental answer is also directed at the claim of intervenor Allen.

P. G. Lake, Inc., filed an intervention in which it adopts the pleadings of Hunt Production Company and claims ownership of the original Joiner oil and gas lease covering this property by assignment from Hunt Production Company. It also seeks cancellation of the lease from Dickerson to Perry Allen of date May 15, 1935, as a cloud on its title. By cross action P. G. Lake, Inc., in an action of trespass to try title asserts its title to ⅞ leasehold interest in the land in controversy under the 10 years' statute of limitation. To the answer of Lake, Inc., appellees filed a general demurrer and general denial.

The trial court appointed Hon. Frank Bolton, an attorney, to defend the numerous defendants cited by publication. Trial was to a jury upon special issues which were answered favorably to appellees and upon which judgment was rendered for them for title and possession of the land in controversy, subject to the previous sale of royalty interest by appellees from their ⅛ royalty retained, and for intervenor Perry Allen for the ⅞ leasehold in the land in controversy. The assignment of the oil and gas lease from C. M. Joiner to H. L. Hunt, Trustee, the assignment from Hunt, Trustee, to Hunt Production Company, the assignment from Hunt Production Company to Hunt Oil Company and P. G. Lake, Inc., the assignment from Hunt Oil Company to P. G. Lake, Inc., and the deed of trust from P. G. Lake, Inc., to H. L. Hunt, Trustee, insofar as they cover the land in controversy, were cancelled and annulled as a cloud on plaintiffs and intervenor Perry Allen's title. The trial court also found that Hunt Production Company and its assignees were estopped by the disclaimer of its agents from claiming any interest in the land in controversy.

In its inception this case was one of trespass to try title, appellee Dickerson asserting ownership to the fee, and intervenor Perry Allen claiming title to the ⅞ leasehold to the land in controversy. As tried in the court below, and as it appears here on appeal, the suit is one seeking cancellation of the original Joiner oil and gas lease insofar as it covers the 148-acre tract of land, a part of the Dan Clark Survey. Appellant excepted to this change being

effected by supplemental petition, which exception was overruled. Error is assigned to this action of the court below which we think presents a serious question. We shall, however, pretermit a discussion of this assignment owing to the disposition to be made of this appeal, and shall consider the case as one of cancellation. Only the ⅞ leasehold interest in the land is here involved, and in reality the controversy is between appellee Perry Allen and appellant P. G. Lake, Inc., each claiming the ⅞ leasehold interest in the 148 acres of land.

Appellants' 8th proposition is: "Appellant P. G. Lake, Inc., having proved title to the land in controversy by connecting itself with the common source by complete chain of title and by connecting intervenor Perry Allen's claim of title with the same source, and the uncontradicted proof showing that appellants' title from said common source was superior to that of said appellee, said appellant was entitled to have the jury instructed to find in its favor."

In response to special issues submitted the jury found: (1) That Hunt Production Company and its assigns after February 25, 1933, and prior to July 26, 1935, the date this suit was filed, abandoned the oil and gas lease in controversy; (2) that Mr. Harder was on or about May 14, 1935, the duly authorized and acting agent in charge of the affairs in the office of H. L. Hunt Production Company; (3) that Hunt Production Company on or about May 14, 1935, acting through its agent Harder told intervenor Perry Allen that it, Hunt Production Company, had no interest in. the lease in question; (4) that said Perry Allen believed and acted upon said representations; (5) that intervenor Perry Allen relied upon said representations in contracting with W. R. Dearing to drill a well on the lease in controversy; (6) that during the month of December, 1934, H. L. Hunt, President of Hunt Production Company, told C. N. Dickerson and wife that the Hunt Production Company was making no claim to the lease in question; (7) that C. N. Dickerson believed and acted upon the statement of Hunt; and (8) that C. N. Dickerson at the time of the execution of the lease contract to Perry Allen relied upon the statement made to him by Hunt.

It is undisputed in this record that on March 30, 1927, C. N. Dickerson and wife executed an oil and gas lease to C. M. Joiner, Trustee, covering the land in controversy, a part of the Dan Clark Survey, hereafter referred to as the Clark tract, said tract containing about 148 acres. Said lease contained two other tracts, one of 47.88 acres, also a part of the Dan Clark Survey, and the third tract containing 55 acres, a part of the Thomas J. Martin Survey, and hereafter referred to as the Martin tract. These tracts were described separately in the oil and gas lease and were numbered 1, 2 and 3, respectively, and were shown to contain in the aggregate 250 acres, more or less. On November 26, 1930, this lease in its entirety was assigned by Joiner to H. L. Hunt, Trustee, and by said Hunt on June 1, 1932, assigned to Hunt Production Company. The record also shows that on February 25, 1933, Dickerson and wife ratified and confirmed unto the Hunt Production Company the original oil and gas lease executed by them to C. M. Joiner, Trustee, of date March 30, 1927, except as to tract No. 2, the smaller tract on the Dan Clark Survey, which was released by Hunt Production Company to Dickerson and wife. This ratification was the result of a settlement and compromise of a suit brought by Dickerson and wife against Hunt Production Company to cancel the original lease to Joiner then held by it. On October 2, 1936, some months after this suit was filed, Hunt Production Company assigned the oil and gas lease covering the land in controversy, known as Tract No. 1, or the Clark tract, and Tract No. 3, the Martin tract, to appellant P. G. Lake, Inc.

At the time of the ratification by Dickerson and wife, noted above, Hunt Production Company had begun operations for oil and gas on the Martin tract covered by said lease and had brought in at least one producing oil well. At the time this suit was filed Hunt Production Company had drilled six oil wells on the Martin tract, and when this suit was tried Lake, Inc., had drilled two more wells on said tract. All eight oil wells were producing the allowable of oil, and those entitled thereto were receiving their royalty. No well for oil has been drilled on the tract of land in controversy, the Clark tract. It is contended by Lake, Inc., that the land described in the original Joiner lease should be considered as a unit, and that the drilling of producing oil wells, six in number before this suit was filed, upon the Martin tract under the provisions of the original Joiner lease, as a matter of law, vested title to the ⅞ leasehold in both tracts described in said lease, and in the ratifica-

tion thereof, in Hunt Production Company, assignor of Lake, Inc., as a determinable fee. The original oil and gas lease from Dickerson and wife to C. M. Joiner, Trustee, of date March 30, 1927, provided: "It is agreed that this lease shall remain in force for a term of 5 years from this date and as long thereafter as oil or gas or either of them is produced from said *land* by lessee. * * * If no well be commenced on *said land* on or before the 30th day of March, 1928, the lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender the lessor * * * the sum of $31.25 which shall operate as a rental and cover the privilege of deferring the commencement of a well for six months from said date * * * Should the first well drilled on the *above described land* be a dry hole, etc. * * *"

From the above pertinent language it is clear to us that the parties to the original lease treated the three tracts of land described therein as a unit and there is nothing in the entire contract evidencing a contrary intent. "If the parties intend that separate portions of the entire land covered by the lease should be developed as units the lease should expressly so state." Summers, Oil and Gas, Permanent Edition, Vol. 3, page 205, latter part of § 515; Johnson v. Montgomery, Tex.Civ.App., 31 S.W.2d 160, writ refused. See also Douthitt v. Wheeler, 110 Okl. 131, 236 P. 408 which we think is exactly in point. We conclude, then, that the drilling of six producing oil wells by Hunt Production Company on a portion of the land described in the original Joiner lease and the actual operation of said wells, both at the time this suit was filed and at the time of the trial thereof, was such a compliance with the terms of said lease as to vest title as a determinable fee, to not only the Martin tract on which said oil wells are located, but also to the Clark tract, the land in controversy, in Hunt Production Company and its assignee P. G. Lake, Inc.

But it is contended by appellee that the statement made to Dickerson and wife by H. L. Hunt, President of Hunt Production Company, to the effect that his company did not claim the lease on the land in controversy, the Clark tract, and the statement by Harder, agent of Hunt Production Company, to appellee Perry Allen to the same effect, both statements being made before the oil and gas lease to Allen was executed by Dickerson, coupled with the fact that no oil wells had been drilled on the land in controversy together with the failure of Hunt Production Company to render the lease on said Clark tract for taxes for the two years next preceding the execution of the lease to Allen, constitute sufficient grounds of abandonment to warrant a cancellation of said oil and gas lease insofar as it covers the Clark tract of land, or at least raised an issue of fact with respect to such abandonment to be submitted to the jury for determination. We do not agree with this contention. If the development for oil and gas by Hunt Production Company on the Martin tract, a part of the land described in the original lease to Joiner, was sufficient under the terms of said original lease to vest title to the oil and gas in place in both the Martin and the Clark tracts, and we have held as a matter of law that it does, then the above statements and acts of the agents of Hunt Production Company as reflected by this record could not in law divest it of such title. Hanrick v. Dodd, 62 Tex. 75; Jobe v. Osborn, 128 Tex. 509, 97 S.W.2d 939; Hardin v. Wanslee, Tex. Civ.App., 197 S.W. 1031, writ refused; Foster v. Persinger, Tex.Civ.App., 30 S.W. 2d 378, writ refused. True, the above cited cases have reference to vested fee simple title to land, but, in our opinion, the same rule would apply to a vested determinable fee to oil and gas in place under the original oil and gas lease. Except under extraordinary circumstances, not present here, the right to forfeit or cancel said original oil and gas lease would not exist after production had been commenced by Hunt Production Company, within the primary period, on a portion of the land covered by said lease, for failure to continue development on the other portions of the leased premises. In Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W. 2d 27, 28, it is said: "Such a writing as that here called a lease operated to invest the party called lessee and his assigns with title to oil and gas in place." Citing cases. And, there can be no fraudulent evasion with respect to the use which keeps the estate alive. But it is not a partial use, nor a negligent use, nor an imperfect use, but a cessation of use which terminates the lessee's estate. In Johnson v. Montgomery, supra, it is said [31 S.W.2d 165]: "If the estate conveyed to the defendants by the lease was a determinable fee and they having drilled the two wells producing gas in commercial quantities, within the pri-

mary period, the right to forfeit the lease for the breach of an implied obligation to continue the development after the producing of the two gas wells did not exist." Citing Grubb v. McAfee, 109 Tex. 527, 212 S.W. 464.

While it is true that a fee of this character "does not survive abandonment, but the fact of abandonment is a necessary corollary to the cessation of the lessee's rights. The lessees have an implied obligation to use reasonable diligence in operating the lease to accomplish the ends sought by the parties, and this implied obligation is a covenant, the usual remedy for a breach of which is an action for damages, though, under extraordinary circumstances * * * a court of equity would entertain an action to cancel the lease in whole or in part." Leonard v. Prater, Tex.Com.App., 36 S.W.2d 216, 221, 86 A. L.R. 499; Waggoner Estate v. Sigler Oil Co., supra.

It is also contended that the fact situation found by the jury to exist, and about which there is no dispute in the record, estops Hunt Production Company and its assignee, Lake, Inc., from denying the fact of abandonment of the lease on the Clark tract. It is the contention of appellee Perry Allen that on account of the statements made to him by Harder and the statements made to Dickerson and wife by Hunt, known to him, he was induced to and did purchase an oil and gas lease on the Clark tract and entered into a drilling contract with Dearing & Sons in which he obligated himself to pay to said drilling contractors the sum of $5,000 as damages in the event his title to the ⅞ leasehold interest in said land failed. When Hunt and Harder made the statements to Dickerson and wife and Perry Allen, respectively, the title to the leasehold in both the Martin and the Clark tracts of land described in the original Joiner lease and the ratification thereof had vested in Hunt Production Company by virtue of its having begun and completed the primary term of said lease certain producing oil wells on a part of the land covered by the lease, to-wit, the Martin tract. It is shown without dispute that the original lease, together with its ratification were of record in the deed records of Rusk County, Texas, at the time Hunt and Harder made the statements attributed to them. The fact of the existence of the original Joiner lease, its assignment to Hunt, its ratification by Dickerson and wife, and the production of oil from land covered thereby were actually known by Dickerson, Perry Allen's lessor. At the time Hunt made the statement to Dickerson and wife and also at the time Harder made the statement of disclaimer to Perry Allen and upon which he claims to have acted, Allen was charged with notice of the record title of Hunt Production Company to the ⅞ leasehold interest in both the Clark and the Martin tracts of land described in the recorded instruments above referred to, and he was also charged with knowledge of the laws of this State which forbade the transfer or relinquishment of title to real estate or any interest therein by verbal declaration or disclaimer. The record title held by Hunt Production Company to the ⅞ leasehold in these two tracts of land, coupled with its actual possession and occupancy of a part of the premises described in the oil and gas lease to Joiner for the purpose of producing oil therefrom under the terms of said lease, were matters to which appellee Perry Allen could not shut his eyes. His opportunity for knowledge respecting ownership and occupancy of the leasehold interest in these two tracts of land was equal to that of Dickerson, his lessor. Allen testified that he thought Hunt Production Company owned an oil and gas lease on this land. Had he gone on the land in controversy, which the record shows lies adjacent to the Martin tract upon which there were eight producing oil wells, he would have seen actual production on a portion of the land covered by the original oil and gas lease given to Joiner and held at that time by Hunt Production Company. Allen cannot claim to have been deceived by the statements, acts and conduct of Hunt Production Company. He had constructive knowledge of the "true state of the title" to the leasehold and if he had used the diligence required of an ordinary person, he would not have acted to his injury. In Burleson v. Burleson, 28 Tex. 383, exact page 415, it is said: "The ground upon which the estoppel proceeds is fraud, actual or constructive, on the part of the person sought to be estopped. What will amount to the suggestion of a falsehood, or the suppression of the truth, may be difficult to determine in all cases; but some turpitude, some inexcusable wrong, that constituted the direct motive, or induced the outlay or purchase, is necessary to give silence or acquiescence the force of an estoppel in pais. *Hence, the ignorance of*

*the true state of the title on the part of the purchaser must concur with willful misrepresentation or concealment on the part of the person estopped."*

In the case of Page v. Arnim, 29 Tex. 53, 54, our Supreme Court quoted with approval from the case of Boggs v. Merced Min. Co., 14 Cal. 279, 367, the following: " 'It is undoubtedly true, that a party will, in many instances, be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said, in such cases, to be estopped from denying the truth of his admissions. But to the application of this principle, *with respect to the title of real property,* it must appear, first, that the party making the admission, by his declaration or conduct, was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, *that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge;* and, further, that he relied directly on such admission, and will be injured by allowing its truth to be disproved.' "

In the case of Hume v. Carpenter, Tex. Civ.App., 188 S.W. 707, 710, writ of error refused, under a fact situation somewhat similar to that in the case at bar with respect to the doctrine of estoppel in pais as applied to a corporation, based upon the declarations of disclaimer of title to certain real estate by one of its officers, this statement is made: "Nor do we think that any such authority can be implied from its course of dealing. It may be doubtful under the facts in evidence if anything less than a resolution of the board of directors would have authorized the disposition of this property on the part of Atkinson. *Certainly, a street corner conversation ought not to be held to have such effect."* Pomeroy's Eq.Jur. (4th Ed.) Vol. 2, Sec. 806. In the case of State of Oklahoma v. State of Texas, 268 U.S. 252, 45 S.Ct. 497, 69 L.Ed. 937, by the Supreme Court of the United States, it is said:

"A secondary question is whether, if the Powell survey included this strip, the present owners of that survey are estopped from claiming the strip, and therefore the royalty interest, as against the Durfee Mineral Company. * * *

"The master concluded, and we agree with him, that as a whole the evidence shows that the Durfee Company and its predecessors purchased with full knowledge of the record title * * *. In this situation the asserted estoppel must fail. Only where conduct or statements are calculated to mislead a party and are acted upon by him in good faith to his prejudice can he invoke them as a basis of such an estoppel. *And if they relate to the title of real property 'where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.' "* (Italics in all quotations ours.)

We conclude, then, that the doctrine of equitable estoppel in pais does not apply in this case. The conclusions reached by us as expressed above render a discussion of the other assignments brought forward unnecessary.

The judgment of the trial court is reversed and judgment is here rendered for appellant P. G. Lake, Inc., for title and possession of the ⅞ leasehold interest in controversy.