Gus A. HILLEGUST et al., Appellants,

v.

AMERADA PETROLEUM CORPORATION
et al., Appellees.

No. 5052.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 22, 1955.

Rehearing Denied Oct. 12, 1955.

Madison R. Rayburn, Houston, for appellants.

Smith & Fulton, Houston, Stubbleman, McRae & Sealy, Midland, Dean J. Capp, Houston, Butler, Binion, Rice & Cook, Houston, for appellees.

ANDERSON, Justice.

The appellants were plaintiffs in the trial court and will be so referred to here. In their petition they represent that they sue "in trespass to try title for the removal of a cloud upon their mineral title, for the construction of mineral deeds and royalty conveyances and declaratory judgment relief." The petition contains a formal count in trespass to try title which, standing alone, would place in issue title to, as well as the right to possession of, 75 acres of land in Montgomery County, Texas, a part of the Joseph House League. However, in addition to pleading the general count, plaintiffs specially pleaded the title they assert, and prayed for special relief. Under their special pleadings they seek to have the matters in issue adjudicated by declaratory judgment. Primarily, they seek to have it adjudged that in so far as the 75 acres are concerned two mineral deeds affecting said land have terminated, and to have the cloud the deeds are alleged to cast upon their title removed. Plaintiffs also seek to have adjudicated their rights to bonuses, rentals, and royalties under an oil and gas lease that was executed and delivered after it is claimed the mineral deeds were no longer in effect.

Amerada Petroleum Corporation, Stanolind Oil and Gas Company, and Sunray Oil Corporation, who will be hereafter referred to as the oil companies, are the present owners of whatever titles and estates the mineral deeds in question still afford, and are the real defendants in interest. Johnny Mitchell, the remaining defendant, appears to have been brought into the suit because he was thought to be a necessary party in a legal sense rather than because of any conflict between his and plaintiffs' interests. He is the present owner of the leasehold estate created by the mineral lease that was executed and delivered after it is claimed the mineral deeds terminated; and by their pleadings the plaintiffs affirm the validity of the lease and do not allege that it has been breached in any respect.

The defendant Mitchell answered by plea of not guilty and by general denial but did not participate in the hearing in the trial court and has neither appeared nor filed a brief in this court.

The remaining defendants, the oil companies, each filed and urged special exceptions to plaintiffs' petition, thereby challenging the sufficiency of the petition to state a cause of action against them. They aver in the special exceptions that plaintiffs' petition—to specific portions of which the exceptions make appropriate reference—shows on its face that the two mineral deeds in question are still in full force and effect as regards all land described in them. The trial court sustained the special exceptions of the oil companies; and when plaintiffs declined to amend their petition, dismissed the suit altogether and as regards all defendants. The appeal is from the order of dismissal.

Without undertaking to quote plaintiffs' petition, and without further reference to it, we shall merely state as facts the matters therein alleged which are deemed material.

The mineral deeds to be construed, the acknowledgments excluded, are as follows:

"State of Texas }
County of Harris }

"Know All Men By These Presents: That, We, Otto Hillegeist and Caroline Hillegeist, husband and wife, of Harris County, Texas, have and by these presents do Grant, Bargain, Sell, Convey, Set Over, Assign and Deliver unto Merry Bros. and Perini, Incorporated, a corporation organized and existing under and by virtue of the laws of the State of Texas, with its principal place of business in Houston, Harris County, Texas:

"One-half interest in and to all of the oil, gas, salt, sulphur, potash and other minerals of every kind and character in and under and that may be produced from the following described land, situated in Harris County, Texas, to-wit:

"All that certain tract or parcel of land lying and being situated in Harris County, out of the Joseph House League, described

as follows: Forty-four and one-fourth (44¼) acres out of a 200-acre tract more fully described in deed of Geo. Scherer to Charlie Faetche, dated January 29, 1855, and recorded in Harris County Record of Deeds, Book P, Page 499, said 44¼ acres to be taken as follows: Beginning at the S.W. corner of said 200 acre tract; thence East 276 Varas to corner; thence North 864⅗ varas to corner; thence West 276 varas to corner; thence South 864⅗ varas to PLACE OF BEGINNING.

"Also: Eighty and three-fourths (80¾) acres of land out of the above-mentioned 200 acres out of the Joseph House League, of which seventy-five (75) acres are lying in Montgomery County, and 5¾ acres in Harris County, said 80¾ acres to be taken as follows: Beginning at the N.W. corner of said 200 acres described in the above-mentioned deed of Geo. Scherer to Charles Faetche; thence East 198 varas to corner; thence South 2326⅗ varas to corner; thence West 198 varas to corner; thence North 2326⅗ varas to the Place of Beginning; it is specially agreed between the parties that ¼ of an acre out of the southeast corner of said 80¾ acres above-mentioned is retained as burial ground to be taken as follows: the length of one acre from south to north along the East line and ¼ acre wide, East to West.

"Being the same land and premises described in a deed from Morritz, et al, to Otto Hillegeist, by deed dated December 3, 1905, recorded in Vol. 176, Pages 497 and 499, of the Deed Records of Harris County, Texas, reference being here-now made to the original and record of said deed for further and more perfect description and for all other purposes; together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas, salt, sulphur, potash and other minerals of every kind and character and removing the same therefrom.

"This royalty conveyance, however, is for a period of twenty years from this date and no longer, except that if oil, gas, salt, sulphur, potash, and other minerals, or either of them, is being produced from said premises at the expiration of this time, then this conveyance shall continue in full force and effect so long as oil, gas, salt, sulphur, potash and other minerals are being produced in paying quantities.

"And the said above-described lands being now under, embraced in and covered by an oil and gas lease, originally executed in favor of.............................. and now held and owned by.............. it is understood and agreed that this sale is made subject to said lease, but this sale covers and includes one-half of all the royalty of every kind due and to be paid under the terms of said lease, from the above described land.

"It is agreed and understood that none of the money rentals covering the above-described land which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Merry Bros. and Perini, Inc., and in the event that the said above-described lease for any reason becomes cancelled or forfeited, then, and in that event, the lease interests and all future rentals on said above described land, for oil, gas, and mineral privileges shall be owned jointly, the grantee herein owning one-half interest in all oil, gas and other minerals in and upon said land, together with no interest in all future rents.

"This sale is made for and in consideration of the sum of One Thousand ($1,000.-00) Dollars cash in hand paid, the receipt of which is hereby acknowledged.

"To Have And To Hold, the above-described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Merry Bros. and Perini, Inc., its heirs, successors and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to Warrant and Forever Defend all and singular the said property unto the said Merry Bros. and Perini, Inc., their successors and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

"Executed at Houston, Texas, this the 9th day of January, 1933.

"/s/ Otto Hillegeist
/s/ Caroline Hillegeist"

"State of Texas
County of Harris

"Know All Men By These Presents:

"That Otto Hillegeist and wife, Caroline Hillegeist, of Harris County, Texas, for and in consideration of the sum of Eighteen Hundred and No/100 Dollars ($1800.00) cash in hand paid by J. H. Meek, Jr., hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered and by these presents do grant, sell, convey, assign and deliver unto the said Grantee an undivided one-fourth (¼) interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Harris and Montgomery Counties, Texas, to-wit: [Description substantially the same as that contained in the foregoing deed.]

"It is agreed and herein stipulated that in case there is no paying production on said land on the 13th day of February, A.D. 1948, that this grant shall become null and void and the minerals hereby conveyed shall revert to the said grantors, their heirs and assigns. But should there be such production, then and in that event, this grant shall remain in full force and effect until such production ceases, after which this instrument shall become null and void.

"Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease, executed in favor of Windsor Oil Co. and The Texas Co., it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes ¼ of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event said Grantee shall own ¼ of all oil, gas and other minerals in and under said lands but no interest in bonus paid or delay rentals provided for in future oil, gas and mineral leases covering above-described land.

"To Have And To Hold The Above Described Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee herein, his heirs and assigns as above provided; and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said Grantee herein, his heirs and assigns against every person whosoever lawfully claiming or to claim the same or any part thereof.

"All interlineations and corrections made before signing.

"Witness our hands this the 13th day of February, 1933.

"/s/ Otto Hillegeist
/s/ Caroline Hillegeist."

Both are conceded by plaintiffs to be still in force on the 50 acres in Harris County (the 44¼ acre tract plus 5¾ acres of the 80¾ acre tract) because of production of oil and gas from the 44¼ acre tract under a mineral lease covering the 50 acres, but are alleged to have terminated on the 75 acres in Montgomery County because there has been no production from that land and none of the royalties from the 44¼ acre tract are apportionable to it.

■ The plaintiffs argue that because the 75 acres were under one mineral lease and the 50 acres under another when the mineral deeds were made, and the deeds were expressly made "subject to" the leases, each of the deeds should be construed as

conveying two separate and distinct mineral estates and as requiring production from the 75 acres as well as from the 50 acres in order to perpetuate the deeds on both tracts. In other words, they contend that, in a legal sense, the leases severed the minerals in the 75 acres from those in the 50 acres, and that because of such legal severance and of the fact that the deeds were expressly made "subject to" the leases by which the severance was effected each of the mineral deeds should be construed as though it were two separate deeds, one covering the 75 acres and the other covering the 50 acres.

We are unable to agree with plaintiffs' contention. The deeds are each entire and were each given for an entire and indivisible consideration. The perpetuation of neither beyond the term of years stipulated in it is expressly conditioned upon production of oil, gas or other minerals from both the 75 acres and the 50 acres nor upon production under either of the leases that were in effect when the deeds were given, but only upon production "from said premises" in the one instance and "on said land" in the other. And since there is nothing in either deed to indicate a contrary intention, we think that by use of the terms "said premises" and "said lands" the parties must be held to have referred to the full 125 acres described in each of them, as a unit; and production on any part of the 125 acres serves during its continuation to perpetuate the deeds on the whole acreage.

█ If plaintiffs' theory that the minerals in the 75 acres were legally severed or separated by the leases from those in the 50 acres is accepted and given effect, we see no reason why the theoretical or legal severance or separation so brought about should be of greater significance than the actual separation that exists when two tracts of land are noncontiguous, nor do we perceive that when the deeds under consideration are treated as if dealing with two segregated mineral estates the situation presented is materially different in the respects under discussion from that which exists when a mineral lease that is to remain in effect during its primary term and so long thereafter

as oil or gas is produced from "said land" or from "the above-described premises" is given on two or more noncontiguous tracts of land; and the law appears settled that in the instance of a lease of the type mentioned production from any one of the tracts of land described in it serves to perpetuate the lease as to all. Hunt Production Co. v. Dickerson, Tex.Civ.App., 135 S.W.2d 597, writ dism. judgm. correct. See, also, Texas Co. v. Curry, Tex.Civ.App., 229 S.W. 643, and Da Camara v. Binney, Tex.Civ.App., 146 S.W.2d 440, writ dism. judgm. correct. The fact that when the deeds were given in the case at bar determinable fee estates in the minerals were already vested in two different persons as a result of the leases is not believed to distinguish the two situations. Just as is true in case of a lease, the condition on which the deeds were to be continued in effect beyond the base terms of years specified in them was a matter of contract between the parties rather than an attribute of the estates granted for the base terms. We feel, therefore, that in principle the question before us is ruled by the cited cases.

Nothing appearing in the leases themselves affects adversely the opinion we have expressed. They were both standard-type commercial leases that had been given by Otto Hillegeist and wife, the one on the 75 acres under date of December 14, 1929, and the one on the 50 acres under date of October 27, 1932. The only difference in their contractual provisions to which our attention has been directed was that the lease on the 50 acres accorded the lessee the right to purchase royalty oil at the prevailing market price, while the one on the 75 acres contained no such provision. Each was for a primary term of ten years, and at the expiration of its primary term the lease on the 75 acres lapsed. The one on the 50 acres has been continued in force by production.

█ Plaintiffs next urge that by failing to explore and develop the 75 acres during the portions of the base terms of the deeds remaining after the lease on said acreage had lapsed the oil companies abandoned and thereby lost the estates granted by the

deeds. The contention is without merit. The deeds conveyed determinable fee estates in the minerals, and such an estate or interest is not subject to termination by nonuser or abandonment for the failure to produce oil or gas or to explore therefor. Summers on Oil and Gas, Vol. 1A, Sec. 139, p. 320; Hanks v. Magnolia Petroleum Co., Tex.Civ.App., 14 S.W.2d 348, 351, affirmed Tex.Com.App., 24 S.W.2d 5; Easley v. Brookline Trust Co., Tex.Civ.App., 256 S.W.2d 983.

■ Only appellants' fifth point is left for discussion. It pertains to the action of the trial court in dismissing that phase of plaintiffs' suit which seeks to have adjudicated by declaratory judgment the rights of the parties in the bonuses, rentals and royalties due and to become due under the mineral lease that was given on the 75 acres of land in Montgomery County after the original lease on that land had lapsed and after the base terms of years specified in the mineral deeds had expired. And we have concluded that because of the procedural matter presently to be discussed reversible error is presented.

The lease involved, which bears date of June 3, 1953, and was given by the heirs of Otto Hillegeist and wife, who, together with Madison Rayburn, a royalty owner, are the plaintiffs in this suit, is for a primary term of three years, recites a cash consideration of $2,250, and provides for delay rentals of $375 annually and for a $\frac{3}{16}$ royalty on all oil produced and saved from the land. It purports to cover all oil, gas and other minerals in the 75 acres and contains a general warranty of title. However, in this connection it also provides: "Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if Lessor owns an interest in the oil, gas or other minerals on, in or under said land less than the entire fee simple estate, then the royalties and rentals to be paid Lessor shall be reduced proportionately. Failure of Lessee to reduce rental paid hereunder shall not impair the right of Lessee to reduce royalties."

We have carefully reviewed the record without finding where either of the defendants filed a special exception that can be said to challenge the sufficiency of plaintiffs' petition to state a cause of action for declaratory judgment adjudicating the rights of the parties to the bonuses, rentals and royalties under the lease. The only special exceptions levelled at the petition were to the effect that the petition affirmatively showed the mineral deeds to be still in effect. There was, therefore, nothing before the trial court to invoke, or on which to predicate, a ruling on the sufficiency of the petition in the particular now under discussion, nor to warrant dismissal of the suit insofar as it undertakes to plead a cause of action with reference to the bonuses, rentals and royalties. It may be true, as appellees urge, that plaintiffs actually failed to plead a good cause of action because of their failure to plead facts showing the existence of a justiciable controversy between the parties, but this is a matter that should have been raised in the trial court by special exception. The mere fact that plaintiffs may have failed to plead a good cause of action does not warrant a finding that they cannot do so, nor does the record before us affirmatively show on its face as a matter of law that they cannot do so. We would therefore not be justified in holding the dismissal of the suit in its entirety harmless error.

Our holding that the mineral deeds are still in effect may, it is true, adjudicate the rights of the parties as regards royalties that may be payable under the lease, and the fact that plaintiffs' petition shows on its face that before suit the bonus was paid to plaintiffs may render moot any supposed controversy with reference to that item, but the same cannot be said of the delay rentals that may be payable under the lease.

It is only by a rather decidedly strained construction that any of appellants' points can be said to present for review any of the rulings actually made by the trial court, but the appellees have treated them as doing so, and we have concluded to do likewise. Therefore, with the explanation that

it is construed as complaining of the trial court's action in dismissing plaintiffs' suit with reference to the bonuses, rentals and royalties provided for in the lease to Mitchell, appellants' fifth point is sustained for the reason assigned. And with the further understanding that the other points are construed as complaining of the trial court's action in sustaining the defendants' special exceptions and in dismissing the suit, they are all overruled. Because alone of the error of the trial court in dismissing the suit in its entirety without the portion of the petition which undertook to plead a cause of action with reference to the bonuses, rentals and royalties under the lease having been challenged by special exception or other appropriate plea, the judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.