(No. 35668.—

J. D. DICKERSON *et al.,* Appellants, *vs.* LUCY MAUDE RAY *et al.,* Appellees.

*Opinion filed September 29, 1960.*

CRAIG & CRAIG, of Mt. Vernon, (HOWARD W. CAMP-BELL, and RONALD W. POLSTON, of counsel) for appellants.

WHAM & WHAM, of Centralia, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Appeal has been taken in this case from a decree of the circuit court of Jefferson County confirming and establishing title to an undivided one-half interest in the oil and gas underlying a 40-acre tract of land. A freehold is involved. *Murbarger* v. *Franklin,* 18 Ill.2d 344.

On February 23, 1928, Henry Ray was the owner of the NE¼ of the SW¼ of section 9, township 1 south, range 2 east, Jefferson County, which shall be referred to herein as the North 40. On the day named, Ray conveyed the premises to his wife, Lucy Maude Ray, "for and during her natural life or remarriage, reversion and remainder to our children, Flossie Etenburn, Everett Ray, Ruth Phelps and Thelma Ray." Thereafter, but prior to June 18, 1937, the son, Everett Ray, died intestate, unmarried and childless.

In 1931, Henry Ray acquired title to the SW¼ of the SE¼ of the same section, referred to herein as the South 40. Subsequently, on December 10, 1935, Ray and his wife executed an oil-and-gas lease embracing both tracts to one Schock, which lease was for a primary term of ten years, or as long thereafter as oil or gas should be produced from the said land. This lease was later assigned to Carter Oil Company.

Title to the two tracts was vested as described above, when, on June 18, 1937, Ray, his wife, the three daughters and the spouses of the latter executed an oil-and-gas lease to Carter Oil Company covering their interest in the North 40, all signatures being acknowledged by Floyd W. Purcell, notary public. On the same day, Ray, his wife and the three daughters executed the mineral deed which is at issue in this case, and their signatures were again acknowledged by Purcell. The husbands of the three children signed the following day and a different notary acknowledged their signatures. The deed, which was a standard printed form of a mineral deed, conveyed to Thomas B. Scott, Jr., an undivided ½ interest in all the oil and gas in and under "the following described lands, for a term remaining in force until December 10, 1945, and for as long thereafter as oil or gas or both shall be produced therefrom, these lands being situated in Jefferson County, State of Illinois, to-wit: NE¼ SW¼ Sec. 9, T. 1 S., R. 2 E. and SW¼ SE¼, Sec. 9, T. 1 S., R. 2 E. containing eighty acres, more or less, * * *."

By subsequent conveyances, Scott conveyed the un-divided ½ interest as follows: February 15, 1938,—a ¼ interest to J. D. Dickerson; March 25, 1938,—a ¹⁄₁₆ interest to H. G. Weeks, (who in turn conveyed a ¹⁄₃₂ interest to J. O. Potter;) and on October 18, 1941,—a ³⁄₁₆ interest to Brookhaven Oil Company. The same standard form of mineral deed was employed in all of these conveyances and, in each instance, the conveyance was of an undivided in-

terest in the oil and gas underlying the 80 acres for the same term as fixed in the deed to Scott. These deeds, as did the deed to Scott, provided that they were subject to any valid oil and gas leases of record, and that the grantees would participate in royalties and other benefits thereunder. It is the grantees of these conveyances who are the plaintiffs in this suit.

Under the leases previously noted, and prior to December 10, 1945, Carter Oil Company produced oil and gas from both 40-acre tracts. Production from the South 40 has continued uninterrupted to date, but production from the North 40 was terminated in October, 1950, and later, in February and June, 1951, Carter Oil Company released its oil-and-gas leases as to the North 40. In the meantime, Henry Ray died intestate survived by his wife and three daughters, his survivors being the principal defendants in this proceeding.

The next event of consequence occurred on November 18, 1951, when plaintiffs, with the exception of Brookhaven Oil Company, joined with defendants in executing an oil-and-gas lease of the North 40 to R. J. McFarland. Among other things, this lease provided that all of the parties of the first part were designated as lessor and were to receive: "(a) the equal ⅛ part of all oil produced and saved from the leased premises, (b) ⅛ at each well where gas only is found while the same is being used off the premises, (c) for gas produced from any oil well used off of the premises or for the manufacture of casinghead gas, ⅛ at the market price at the well for the gas so used." All of the lessors further warranted and agreed to defend the title to the lands described. A separate and similar lease to McFarland was executed by plaintiff, Brookhaven Oil Company, on November 23, 1951. McFarland, in turn, assigned fractions of his leasehold interest to various of the nominal defendants in this proceeding, but their in-

terests, as well as that of a devisee under McFarland's will, are not contested.

A new well was drilled on the North 40 under the McFarland leases and when it commenced the production of oil, which continues to date, this litgation was born. By the pleadings filed in the cause plaintiffs, as successors of Scott, claim to own an undivided ½ interest of the oil and gas under the tract, while the principal defendants, Lucy Ray and her daughters, claim ownership of the entire interest. In view of the dispute, the purchaser of the oil being produced from the North 40 had impounded the proceeds inuring to ½ the royalty, and filed a bill of interpleader in this cause for directions as to the disposition of the fund and the payment of future royalties.

Briefly stated, the issue presented is the construction of the mineral deed given to Scott on June 18, 1937, to arrive at a determination of whether or not production from either of the separate tracts described therein serves to continue the undivided ½ interest of the grantee, and his successors, in the other tract. Generally speaking, it is the plaintiffs' contention that mineral deeds in the nature of the one in question have a settled meaning, and that in the absence of ambiguity in the present deed, parol evidence is inadmissible to vary, contradict, or explain its contents. Defendants, however, assert that the meaning of the deed is not settled and claim in the alternative that ambiguity in the present deed, permits the introduction of parol evidence to arrive at the true intent of the parties.

Before examining these contentions in detail, it will be recalled that the deed in question conveyed an undivided ½ interest in and to all of the oil and gas in and under "the following described lands, for a term remaining in force until December 10, 1945, and for so long thereafter as oil or gas or both shall be produced therefrom." Appearing immediately after this language is a specific description of

the land and the words "containing eighty acres, more or less." Based upon decisions treating upon the construction of deeds, mineral term deeds and oil-and-gas leases, it is the contention of plaintiffs that the language of the deed is clear and unambiguous and that, under the plain meaning of the terms employed, continuous production on any part of the 80-acre tract served to continue their undivided ½-interest in the entire tract. Specifically, plaintiffs point out that the word "therefrom," in the phrase quoted above, can only refer to "the following described lands," and from this concludes it is clear the grantee acquired an undivided ½ interest in the oil and gas under 80 acres of land, and that such interest was to continue for so long as oil and gas was produced from any part of the 80-acre tract.

Defendants, on the other hand, contend that the undivided ½ interest conveyed by the deed expired as to the North 40 by reason of the cessation of production therefrom in October, 1950, together with the release of existing leases as to such tract, and insist this result obtains even though production from the South 40 continued. It is their theory that because the North 40 and the South 40 were, to the knowledge of the parties and to the constructive knowledge of the plaintiffs, separately owned, production as to each 40-acre tract, without regard to production from the other, is what determines the duration of the term in each of the respective tracts. In short, it is defendants' claim that because of the separate ownership, a fact which plaintiffs could have determined by the inspection of public land records, the deed must be construed as if it had effected separate conveyances of the separate tracts.

As an alternative theory defendants alleged in their answer that the deed to Scott was ambiguous because the two tracts were separately owned, and that the ambiguity should be resolved in their favor because (1) the deed was prepared by the grantee or his agent; and (2) the lands

were all included in one deed at the suggestion of the grantee and upon his representation that the use of a single deed would not alter "the understanding of the parties" that the tracts were to be considered separate in all respects. In pursuit of this theory, one of the defendants, Ruth Phelps, was permitted to give testimony, over an objection that parol testimony could not alter the terms of the deed, to the effect that Purcell, the grantee's agent, was present and listened in silence while two of the grantors, the witness and her father, discussed their understanding that although the deed described 80 acres it was intended to be the same as if there were two separate deeds signed covering the respective 40-acre tracts.

The decree appealed from, which appears to be predicated on defendants' alternate theory, found that the interest in the North 40 conveyed by the deed had expired in 1950, that the defendants are the owners of all the oil and gas underlying the North 40, and directed the purchaser of the oil to pay both the impounded funds and future royalties to defendants.

We find no decision in this jurisdiction comparable on its facts. However, looking to the established principles which apply in the construction of deeds and other formal instruments, and to the views of other courts which have dealt with the problem, it is our opinion that the deed in this case is neither ambiguous nor unsettled in its meaning, and that production from any portion of the lands described therein continued the grantee's interests in the remaining portions.

Arising first in decisions relating to oil-and-gas leases, it is the rule of the vast majority that where a number of land owners demise their lands in a single lease, whether contiguous or not, and provide that after a designated period the interest covered by the said instrument will continue for as long as there is production upon said land, produc-

tion which is sufficient to continue the interest as to any of the land described is sufficient to continue the interest as to all of the land described. (*Veeder Co.* v. *Pan American Production Co.* 205 La. 599, 17 So.2d 891; *Lynch* v. *Davis,* 79 W. Va. 437, 92 S.E. 427; *Southland Royalty Co.* v. *O'Daniel,* (Tex. Civ. App.) 287 S.W.2d 182; *Hunt Production Co.* v. *Dickerson,* (Tex. Civ. App.) 135 S.W.2d 597; *Lusk* v. *Green,* 114 Okla. 113, 245 Pac. 636. See also: 2 Summers, Oil & Gas, 209 sec. 295.) Insofar as the ordinary principles of construction are concerned, the basis for the rule is best expressed in the *Veeder Co. case* (17 So.2d at 894) as follows: "A reading of the original lease shows beyond question that it was a joint lease as to both grantors and grantee. It was a joint lease in the true sense. The A. Veeder Company, which is a corporation, and the several individuals who, with the corporation, owned all of the land covered by the lease, all of whom were called ' "Grantor" (whether one or more),' acted as one in granting the lease; they acted unitedly; they bound themselves together as one individual; what one did each and all did. The land covered by the lease was treated as one tract. The recitals and declarations in the lease were not made by the corporation and the individuals separately; they were made unitedly and as one. Acting unitedly and as one, what they, in effect, said to the lessee was that, if he or his assigns should succeed in producing minerals 'on the land' in paying quantities, his 'rights shall [should] remain in effect so long as any of such minerals are [were] produced in paying quantities from the land.' 'The land' referred to was the land covered by the lease—not a part of it but all of it. This was clearly the intent of the parties, as shown by various clauses and phrases in the lease, one of which recites that the grant should terminate on a certain date unless, on or before that date, the grantee should elect by written notice to the grantors 'to either drill *a well on some part of the land* embraced herein' or pay grantors a certain

sum of money on a certain date. The phrase 'on some part of the land embraced herein' clearly means that the development of any part of the land for minerals would perpetuate the lease as to each and every portion of the land covered by the contract. The land covered by the lease was described first as one large tract of 1336.29 acres, which large tract was subdivided for the purpose of description in 12 smaller tracts. The contract repeatedly refers to the property involved as 'the land,' and, in speaking of minerals, it refers to the minerals 'in the land' or 'on the land.' "

Where the question has arisen, courts have extended the same rule to term mineral deeds and hold that where one instrument conveys the oil-and-gas interest in separate tracts, contiguous or not, for a primary term and as long thereafter as oil or gas is produced from such land, production on one tract extends the term of the other tract. (*Southland Royalty Co.* v. *O'Daniel,* (Tex. Civ. App.) 287 S.W.2d 182; *Hillegust* v. *Amerada Petroleum Corp.* (Tex. Civ. App.) 282 S.W.2d 892; *Panhandle Eastern Pipeline Co.* v. *Isaacson,* 255 F.2d 669 (CCA-Okla.); *Baker* v. *Hugoton Production Co.* 182 Kan. 210, 320 P.2d 772. See also: *Southland Royalty Co.* v. *Humble Oil & Refining Co.* 151 Tex. 324, 249 S.W.2d 914, reversing Tex. Civ. App. 244 S.W.2d 249; and *Wilson* v. *Holm,* 164 Kan. 229, 188 P.2d 899.) In the case last cited, the Kansas court made this observation: "Upon a consideration of the foregoing authorities we see no sound reason why the general principles of law heretofore stated, governing the construction of oil and gas leases containing habendum clauses providing the estate conveyed shall continue after the expiration of its primary term for so long as oil and gas is produced in paying quantities, should not be applicable to the construction of a mineral deed containing identical or similar provisions." (188 P.2d at 906.) More objectively, it was said in *Baker* v. *Hugoton Production Co.* (320 P.2d at 774): "the instrument grants a base

or determinable fee in the oil, gas and other minerals in place in the 3,630 acres described therein. The grant is for a term of 20 years and as long thereafter as oil, gas, or either of them, are being produced from *said land*. The words 'said land' refer to the 3,630 acres described in the granting clause. Production on any part of that acreage was production from *said land,* the legal effect of which was that the mineral interest was perpetuated and extended as to the *entire* acreage. *Cowman* v. *Phillips Petroleum Co.* 142 Kan. 762, 51 P.2d 988, and *Wilson* v. *Holm, supra,* 164 Kan. at page 237, 188 P.2d at page 905." (Emphasis the court's.)

Defendants do not deny the existence of the rule, nor its application by some courts to term mineral deeds, but insist that it has no application here because the separate tracts described in the present deed were separately owned, in contrast to the situation of the mineral deed cases cited where the separate tracts conveyed were owned by the same person or persons. Apart from the circumstance that we are not told how this distinction could alter the meaning of the words by which the term is described, we think a complete answer to the contention is found in *Hillegust* v. *Amerada Petroleum Corp.* (Tex. Civ. App.) 282 S.W.2d 892, at 896, where it is said: "Just as is true in the case of a lease, the condition upon which the deeds were to be continued in effect beyond the base term of years specified in them was a matter of contract between the parties rather than an attribute of the estate granted for the base term." Here, defendants were as aware of the separate ownership as was the grantee, if not more so, but did nothing to condition the term on that fact, and would now place some greater significance on the grantee's knowledge than their own. By the plain meaning of the terms employed in the deed they signed, the two tracts were held forth as one unit of 80 acres and they agreed that the term would re-

main in force for as long after the primary term "as oil or gas or both shall be produced therefrom." As was true in *Baker* v. *Hugoton Production Co.,* previously discussed, the word "therefrom," in the context of the deeds, refers to the land described in the granting clause, and thus production from any of "the following described lands" had the legal effect of extending the mineral interest in all the land. We think, too, it can be reasonably said that defendants themselves, to some degree, placed the same construction on the deed when plaintiffs were joined in the new lease of the North 40 given to McFarland.

Moreover, as were the courts in *Southland Royalty Co.* v. *O'Daniel,* (Tex. Civ. App.) 287 S.W.2d 182, 187; *Hillegust* v. *Amerada Petroleum Corp.* (Tex. Civ. App.) 282 S.W.2d 892, 896; and *Wilson* v. *Holm,* 164 Kan. 229, 188 P.2d 899, 905, we are of the opinion that, in principle, the oil-and-gas lease cases which have applied the rule, even though there was separate ownership of the demised premises, are support for the conclusion we have reached. Defendants argue forcefully to the contrary, asserting that the *sole* reason for the rule in lease cases has been the fact that the lessor of the nonproducing tract or tracts is permitted to share the royalties which accrue to the producing tract. (See: *French* v. *George,* (Tex. Civ. App.) 159 S.W.2d 566; *Law* v. *Stanolind Oil & Gas Co.* (Tex. Civ. App.) 209 S.W.2d 381; *Lynch* v. *Davis,* 79 W. Va. 437, 92 S.E. 427. Contra: *United Gas Public Service Co.* v. *Eaton,* (La. App.), 153 So. 702.) While we think it could be said that the problem does not arise here, since plaintiffs and the principal defendants are in fact sharing the royalties from the South 40, the producing tract, we agree with plaintiffs that the sharing-of-the-royalties doctrine has been one of the effects rather than the reason for the rule that production within the primary term on one of the leased tracts extends the term as to all of the tracts. As previously

pointed out, particularly in the quotation from *Veeder Co.* v. *Pan American Production Co.* 205 La. 599, 17 So.2d 891, 894, the rule has been arrived at in the oil-and-gas-lease cases simply by giving the term-extension clause to which the parties contracted its plain and unambiguous meaning. It follows that the same or similar language appearing in a term mineral deed must receive the same construction, and that the meaning of the words cannot be said to have been altered by the later formed doctrine which permits the sharing of royalties between multiple lessors.

To further avoid the application of the rule, defendants contend that if the term of a mineral deed is extended as to all tracts by production from a single tract, the owner of the non-producing tract will suffer irreparable harm in that he would be powerless to prevent drainage of the "reversionary oil" from his land brought about by production on the adjoining tract. However, each of the tract owners in the present case retained a one-half interest in the oil and gas under their respective tracts. If production from one tract results in drainage from the other any harm that results to the owner of the latter tract may be readily prevented, inasmuch as sections 1 and 2 of the act relating to oil-and-gas interests in land, (Ill. Rev. Stat. 1959, chap. 104, pars. 25 and 26,) permits persons owning one-half interest or more to protect their land by forcing the other owners to join in its development. In short, the separate owners in the instant case are in the same position as any other land owners. If drainage is to be prevented, the land must be developed.

We are of the opinion that there is no ambiguity in the terms used in the mineral deed in this case and that the term-extension clause employed therein has a settled legal meaning. This being so, the instrument itself was the only criterion of the intention of the parties, and the trial court was in error in permitting oral testimony to vary its terms. (*Rockford Trust Co.* v. *Moon,* 370 Ill. 250; *Fowler* v.

*Black,* 136 Ill. 363.) Accordingly, the decree of the circuit court of Jefferson County is reversed and the cause is remanded, with directions to enter a decree for the plaintiffs consistent with the view expressed in this opinion.

*Reversed and remanded, with directions.*