(No. 35564.—

Austin Reynolds *et al.*, Appellees, *vs.* William Jackson Burns *et al.*, Appellants.

*Opinion filed September 29, 1960—Rehearing denied Nov. 30, 1960.*

CRAIG & CRAIG, and J. J. MIDDLETON, both of Mt. Vernon, and AUGUST L. FOWLER, of Marion, for appellants.

JOHN D. DAILY, of McLeansboro, RALPH W. HARRIS, of Marion, and BUTHOD, BARNETT & HARRISON, of Evansville, Indiana, (HUGH J. DOBBS, and FRANK W. YOUNG, of counsel,) for appellees.

MR. JUSTICE HERSHEY delivered the opinion of the court:

This is an action to quiet title to the oil, gas and other minerals, except coal, in and under some 14 parcels of land in Saline County. The plaintiffs, by their amended complaint, sought to remove certain instruments as clouds upon their title and further sought a declaratory judgment that they were entitled to all of the oil and gas produced or to be produced from the described premises.

The circuit court of Saline County entered a decree granting the relief prayed in the complaint and dismissed the counterclaim of one group of defendants who are appellants in this court.

The plaintiffs claim a fee-simple title to the mineral estate, as do the defendants. A freehold being thus involved, this court has jurisdiction on direct appeal.

A determination of the issues here involved requires a

somewhat detailed statement of the history of the title to the land involved over a period of many years. In substance, the parties are in accord as to the factual matters in the record of title but reach different conclusions as to the legal effect of the stated facts.

In November of 1910, A. J. Webber, the then owner of the property here involved, died testate. By his will, which was duly admitted to probate in the county court, a trust was created to last for a period of 15 years from the date of his death. The named trustees-executors were to have control of the property and to continue to operate certain businesses and divide the net income among named beneficiaries. At the expiration of the 15 years, the trust was to terminate and the trust property was to be distributed. J. H. Webber and May O. Burns, children of the testator, were to receive the property on the basis of the terms and conditions of the will and the conditions of survivorship existent at the time of the expiration of the 15-year period.

The named executors-trustees qualified as such and proceeded to the administration of the estate. An inventory of the estate, which included the land involved in this litigation, together with considerable other real estate and personal property, was duly filed.

In 1915 one of the two named executors died and J. H. Webber was selected as successor pursuant to the selection provisions in the A. J. Webber will. In 1923 the executors-trustees instituted a proceeding in the circuit court to construe the will and to ascertain the authority of the executors-trustees to borrow money and pledge the assets of the estate or trust as security therefor. A decree was entered in that proceeding construing the will and authorizing the executors-trustees to borrow money and to pledge the assets of the estate as security therefor. In that proceeding the executors and trustees were parties, as were the beneficiaries, although the proceeding has been described by the parties as an *ex parte* proceeding.

Thereafter, in accordance with the decree of construction, the executors-trustees borrowed certain money and gave notes to secure the same. Included among the obligations thus incurred was a note for $6,000 to J. M. Reynolds.

In January of 1927, after the expiration of the 15-year trust term, the executors-trustees filed a final account in the county court proceeding, to which was appended an agreement signed by May O. Burns and J. H. Webber, reciting a complete and full settlement of the trustees' account, and, by this agreement, the beneficiaries agreed to assume all outstanding obligations of the estate in consideration of the transfer to them of the assets of the estate or trust. The final report and the agreement were thereupon approved on January 29, 1927.

On June 9, 1927, the beneficiaries, as the then legal titleholders, made an assignment for the benefit of creditors. By this assignment all property belonging to each of them, including the property acquired from the estate of their father, was assigned and transferred to one W. W. McCreery as trustee. The assignment was for the benefit of all creditors, including J. M. Reynolds and other creditors whose obligations had been incurred during the 15-year term of the trust.

All creditors joined in the execution of the assignment, which provided that the creditors were to accept the assignment in satisfaction of their debts. The trustee was to administer the trust until the debts were all paid and any property thus assigned then remaining was to be returned to J. H. Webber and May O. Burns.

The assignors thereupon executed a deed to W. W. McCreery, as trustee, conveying some 3,000 acres of land, including the land involved in this case. The deed of conveyance recited essentially the terms of the assignment above detailed.

The record before us demonstrates that McCreery, as

trustee, thereafter proceeded with his duties as trustee for the benefit of the creditors. He executed several deeds, conveyed the coal to certain of the lands, and executed oil-and-gas leases. In this connection, it is important to note that certain of the plaintiffs in this proceeding dealt with McCreery as trustee in connection with conveyances of the coal in and under certain of the property.

The amended complaint of plaintiffs and the decree of the court recognized as valid these deeds executed by McCreery both to themselves and to other parties who were originally named defendants but whose interests as acquired from McCreery as trustee were not disturbed in the trial court proceedings.

In 1949, W. W. McCreery, as trustee, conveyed the land remaining in the trust to the heirs of May O. Burns and J. H. Webber. Those heirs and their oil-and-gas lessees are the appellants here and were one group of defendants below.

On May 3, 1937, Austin Reynolds, one of the plaintiffs in this case, filed a petition in the circuit court of Saline County for the appointment of a trustee *de bonis non* of the estate of A. J. Webber. The petition recited the history of the estate, the probate proceedings, and that the executors and trustees of the estate did on May 5, 1922, pursuant to their powers, borrow $6,000 from J. M. Reynolds, evidenced by their promissory note of that date, due November 15, 1922, with interest at 6 per cent, upon which note the trustee paid interest until May 5, 1927, and that interest from that date was due together with the full amount of the principal, which note was assigned by J. M. Reynolds to the petitioner. The petition then alleged, on petitioner's information and belief, that certain property of A. J. Webber, deceased, was never inventoried nor administered in the probate proceeding. Lloyd Reynolds, another plaintiff in this case, who was sought to be appointed as trustee, was, as such trustee *de bonis non,* to take full charge of any

property belonging to the estate and administer the same according to law. The trustee was appointed on the same date the petition was filed and, likewise, on that same date, a claim on the $6,000 note, plus accrued interest, was filed. The docket entry appointing the trustee was by a city judge, signed as acting circuit judge.

Thereafter, in the circuit court proceedings, the trustee, Lloyd Reynolds, filed an oath and bond, and a claim date was fixed and publication was made.

Lloyd Reynolds, designated as trustee de bonis non, filed a petition for the citation of W. W. McCreery, alleging that McCreery had certain personal property of the estate that had not been turned over to the trustee de bonis non. This petition was in June of 1938, at which time Mc-Creery was apparently still functioning as trustee for the benefit of creditors, inasmuch as he executed certain oil-and-gas leases in 1941 and reconveyed the property in 1949 to the heirs of the original assignors. In any event, the citation proceeding by the trustee against McCreery was not further pursued.

In October of 1938 Lloyd Reynolds, as "trustee of the estate of A. J. Webber, deceased," executed a deed purporting to convey six-eighths interest in the oil and gas and other minerals underlying 100 parcels of land containing almost 3,400 acres to J. C. Jones. Thereafter Jones conveyed the same interest to Edward T. Robinson, an appellee.

Lloyd Reynolds, as trustee, continued to take certain action in his purported capacity as trustee of the A. J. Webber estate. For instance, in April of 1940, the trustee filed a petition for leave to enter into a contingent contract with an abstracter, which petition was filed without notice to anyone and, by its terms, the abstracter would receive 20 per cent of the proceeds derived from the sale of the decedent's interest in any real estate that might be discovered or the records of title of which might be discovered by the abstracter. Thereafter a report as trustee was filed by Rey-

nolds showing no receipts and certain liabilities, among them being the claim of Austin Reynolds as assignee of the J. M. Reynolds $6,000 note.

On May 14, 1940, Lloyd Reynolds, again as trustee, filed a petition to sell real estate to pay debts. The petition, in the usual form then in use, alleged that the personal estate of the decedent had been administered in former years by former trustees and executors and that no personal property had been found or received by the petitioner as trustee, that certain claims had been filed and approved, and that there was a deficiency in the personal estate to pay the claims. He then proceeded to allege that the deceased died owning certain mineral rights which were worth the sum of $1,000 and prayed that J. H. Webber and "Mae" O. Burns be made defendants and that the court would authorize the petitioner to sell the interest of the deceased, A. J. Webber, in said real estate to pay debts. Concurrently, a *praecipe* was filed in which the petitioner was described simply as Lloyd Reynolds, plaintiff, and not in his alleged fiduciary capacity. Summonses were issued on the two heirs and returned with service as to May O. Burns and returned with a "not found" certificate by the sheriff as to J. H. Webber. Thereafter a publication was had as to J. H. Webber, and a certificate of publication and an affidavit of posting notices were filed.

Neither May O. Burns nor J. H. Webber appeared in the 1940 proceeding to sell real estate to pay debts.

On June 18, 1940, a decree was filed in that circuit court proceeding, reciting the same general material found in the petition, and the decree ordered the trustee to sell the interest of A. J. Webber in and to certain real estate to pay the debts, after advertising the same. The decree described over 3,000 acres of land, including the land involved in this litigation. It is important to note that all of the interest of A. J. Webber, deceased, in said real estate was advertised, notwithstanding the prior mineral or oil-and-gas conveyance

to J. C. Jones. Thereafter a report was filed on July 23, 1940, reporting that as a result of the decree for sale the property was offered for sale and struck off to Austin Reynolds for a total bid of $725 for the interest of A. J. Webber, deceased, in and to said real estate, and the trustee then reported that he was of the opinion that it was to the best interests of the creditors of the estate that the sale be approved and that he be allowed to execute and deliver to the purchaser a deed conveying to him all interest of the deceased in and to the described 3,000 or so acres of real estate.

On August 8, 1940, an order was entered approving the sale, and on that same date Lloyd Reynolds, as trustee *de bonis non*, executed a trustee's deed in favor of Austin Reynolds purporting to convey the coal, oil, gas and other mineral rights as to 2,938 acres, and the coal only underlying an additional portion of land. Immediately following this deed, Austin Reynolds conveyed fractional interests to other members of the Reynolds group, plaintiffs here, in accordance with what the record demonstrates to have been a prearranged plan whereby Austin Reynolds was bidding at the trustee's sale on behalf of himself and other members of the so-called "Reynolds group," included among whom were Lloyd Reynolds, the trustee, and John Lockwood, the abstracter.

The record does not show any further action by the trustee until March of 1948, at which time he filed a supplemental petition in the same circuit court proceedings reciting that, due to a clerical error, a 40-acre tract was omitted in the previous decree of 1940, although the interest in that 40-acre tract was referred to in the trustee's petition. New service of summons or publication was had as to all defendants named, and the Webber heirs, the defendants below and appellants here, entered a special and limited appearance and filed a motion to strike the supplemental petition upon the grounds that the circuit court of

Saline County did not have jurisdiction to appoint the trustee. The motion contained some 12 grounds for dismissal of the action, but all were basically founded upon allegations of lack of jurisdiction in the circuit court. Thereafter the circuit court entered an order without a recitation of its reasons therefor, allowing the motion to strike and dismiss the supplemental petition, and no appeal was perfected from that 1948 order.

Repeating again the action of W. W. McCreery as trustee, acting under the assignment for benefit of creditors, in 1949 he conveyed the land remaining in the trust under the assignment for benefit of creditors, including the parcels involved in this case, to the Webber heirs, being the heirs of the original assignors for the benefit of creditors. Both the Reynolds group, or the plaintiffs, and the Webber heirs, or the defendants, have each executed certain oil-and-gas leases, and their lessees, or assignees of their lessees, are parties to this proceeding, either as plaintiffs or defendants, depending upon who executed the oil-and-gas lease.

Defendant Edward T. Robinson, who claims his interest through a deed executed by Lloyd Reynolds as trustee in the circuit court proceedings, has settled any differences that he may have with the plaintiffs, and by his briefs concedes that for purposes of this appeal and, indeed, for all purposes, he may be considered as having an interest in common with the plaintiffs.

The respective parties and their lessees or assignees of their lessees have entered into an agreement which was approved by the court, by the terms of which certain oil-and-gas wells have been drilled on the premises that are here involved, and the cost of drilling and equipping the wells has been paid out of the proceeds, and, subject to the release of certain sums for current operating expenses, the funds have been impounded by the purchasing oil company, and the net proceeds are to be distributed on the basis of the determination of the instant litigation.

The record in this case is concerned, therefore, with separate legal proceedings that transpired in prior years. First, the probate proceeding in the county court of Saline County, in which the estate of A. J. Webber, deceased, was administered; next was the circuit court proceeding in the same county in 1923, construing the will and authorizing the trustee to borrow money; and, finally, the circuit court proceeding which confirmed the appointment of Lloyd Reynolds as trustee of the estate of A. J. Webber and the described petitions and order which resulted in the purchase of such interests as the plaintiffs may now have from Lloyd Reynolds as trustee. The decree of the circuit court in this proceeding, being a separate and distinct proceeding from any of the three prior proceedings, concluded that the plaintiffs were entitled to the relief prayed for in their complaint, and the interests of the plaintiffs in the premises were decreed by the circuit court to be a valid interest based upon the prior circuit court proceedings in which Lloyd Reynolds, as trustee, took certain action with reference to the estate of A. J. Webber, deceased.

The Webber heirs contend that the *ex parte* appointment of Lloyd Reynolds as trustee is void and that anything done by virtue of that appointment is of no force or effect. This contention is supported by the suggestion that there was no trust to be administered, that the trust term had expired, and that the Webber heirs were necessary parties. The Webber heirs or their ancestors were joined in the proceedings, if at all, in the 1940 petition to sell real estate to pay debts. The further necessary party, according to the Webber heirs, was omitted when W. W. McCreery was not joined in the proceedings. McCreery, as trustee, under the assignment for benefit of creditors held complete legal title, it is contended, and the only remaining indicia of ownership in the ancestors of the Webber heirs, was the possibility of a reverter contained in the instrument making the assignment for the benefit of creditors.

The Webber heirs in their counterclaim assert the invalidity of the circuit court proceeding by the trustee *de bonis non* and claim title by virtue of descent. The counterclaim recites the history above related and then proceeds to detail certain leases and assignments to other persons who have dealt with or for the Webber heirs. In addition to claiming a valid title, the counterclaim specifically denies any interest in the plaintiffs and attacks the circuit court proceeding, upon which the plaintiffs rely, as null and void.

The Reynolds group, while conceding that certain aspects of the appointment of Reynolds as trustee *de bonis non* may have been irregular, contend that there was a trust in existence over which a court of equity could exercise jurisdiction and that any now-claimed defect in the Reynolds-as-trustee proceeding amounts to a collateral attack upon a prior judgment. It is further suggested that any earlier defects in the trustee proceeding were corrected and ratified in the 1940 proceeding to sell real estate to pay debts, at which time J. H. Webber and May O. Burns were made parties to the proceeding.

Essentially, however, the plaintiffs assert that the circuit court in the Reynolds trusteeship cause had jurisdiction of the necessary parties and the subject matter and that those proceedings effectively divested the title of the ancestors of the defendants. The failure of the ancestors to make any direct attack on those proceedings precludes the heirs from now questioning, collaterally, any aspects of the decree.

Obviously, therefore, the determination of the issues here must center on the question of the validity of the trustee *de bonis non* proceedings. The defendants assert those proceedings to be void, and the plaintiffs claim such interest as they may have by reason of the transactions in those proceedings relating to the subject property.

At the time of his death in 1910, A. J. Webber was the fee-simple titleholder to the disputed premises. By his will

title was placed in certain named executors-trustees for the trust term of 15 years. No irregularity has been suggested in the probate proceeding; nor has any been suggested in the Saline County circuit court proceeding for the construction of the will. The authority of the executors to borrow funds and pledge the assets of the estate is undisputed.

Thus, the indebtedness of the executors to the various creditors was a valid and existing debt at the time the 15-year trust was to terminate. The transfer of the estate assets from the executors to the beneficiaries was in accord with the express terms of A. J. Webber's will. The transfer was made subject to the debts which the transferees assumed and agreed to pay.

Following the transfer, the heirs, J. H. Webber and May O. Burns, acknowledging their debts, made an assignment for the benefit of their creditors. The creditors were parties to the assignment and consented to the assignment. J. M. Reynolds was a party to the assignment and, as the plaintiffs choose to phrase it, he "acquiesced in the execution of this agreement by signing it."

The instrument of assignment provided that the assignors convey and assign to the trustee all of the real property of the assignors in which they may be beneficially interested whether in possession, reversion, remainder or expectancy. The trustee was given the power to sell or convert any of the assets into money and to apply the proceds toward the indebtedness. He was given the power to sell, mortgage, convey or otherwise assign any of the property and to compromise claims. The instrument of assignment was implemented by deeds executed by the assignors to the trustee. By the deeds of conveyance, the trustee acquired all of the right, title and interest of the grantors of the deeds and the assignors of the assignment for benefit of creditors. We are satisfied that the assignment in the present case was effective to pass both legal and equitable title to the property to the trustee, McCreery.

In the instant case, all of the interests of the assignors were transferred to the trustee for the benefit of creditors, and the assignors retained only the possibility that in the event that the creditors were satisfied without the consumption of all of the property or all of the interests in all of the property, they, the assignors, would receive back such property or such interests in the property as may be left.

Thus, in 1927, McCreery held legal title as trustee for the benefit of creditors and the assignors had a possibility of reverter. The record indicates that such was the fact at the time, May 3, 1937, when Austin Reynolds instituted the Lloyd Reynolds trustee *de bonis non* circuit court proceedings. It becomes immaterial to have to determine the question whether or not J. H. Webber and May O. Burns were personally properly within the jurisdiction of the circuit court in that proceeding. Legal title was in McCreery as trustee and the assignors had only a possibility of reverter, which interest, we have noted, is an inalienable one.

The contention of plaintiffs that the assignment for the benefit of creditors was void because of certain powers retained in the assignors is not well taken. A reversion of a use or a benefit by the assignor may, under certain circumstances, invalidate such an assignment. However, in reciting this rule the plaintiffs overlooked the distinction to be made between an assenting and nonassenting creditor. One who has assented to an assignment and has become a party to it cannot thereafter attack it or pursue remedies inconsistent with the position he has assumed, even though, as to persons not in such a position, the assignment may be void or voidable. Any defects in the assignment were waived and acquiesced in by J. M. Reynolds as a creditor, and Austin Reynolds, who instituted the trustee *de bonis non* proceeding as assignee of J. M. Reynolds, was, of course, in privity with him, and there is no suggestion to the contrary.

Thus, at the time of the Lloyd Reynolds trustee *de bonis*

*non* proceeding, if it were concerned with the title to the subject lands, W. W. McCreery was a necessary and proper party. His absence from the proceeding was a defect. Further, it is difficult to classify the proceeding instituted in 1937, for, at that time, although a trustee was sought to be appointed, there was no trust in existence in the estate of A. J. Webber and the trustee *de bonis non* proceeding did not purport to be picking up the duties and responsibilities of McCreery as trustee for the benefit of creditors. The proceeding for appointment of a trustee *de bonis non* did purport, upon information and belief, to know of certain assets of the estate of A. J. Webber, deceased, never inventoried or administered upon, but no additional assets were ever found or made known to the court in that proceeding.

Since there was no trust in existence on which administration could be had, the order of appointment and the subsequent orders entered pursuant to that order of appointment would be a nullity. While it is true that a decree of a court is not subject to collateral attack if a proceeding has been instituted properly in a court on a subject matter of which the court has jurisdiction, it is also true that if there is a total lack of jurisdiction in a court, as in this case, as to both subject matter and parties, no rights are created by that proceeding and they may be pronounced void when collaterally attacked. *Wood* v. *First National Bank of Woodlawn,* 383 Ill. 515.

A void judgment can be impeached at any time in any proceeding whenever a right is asserted by reason of that judgment, and it is immaterial, in a consideration of the validity of the judgment, whether or not the time for review by appeal has expired. (*Simmons* v. *Hefter,* 308 Ill. 292; *Ward* v. *Sampson,* 395 Ill. 353.) In this case the validity of the judgment is first put in issue when the court is called upon to pass upon the validity of the title of the plaintiffs. Since their title originates with the trustee *de*

*bonis non* proceeding and the judgments and orders and actions therein involved, although the plaintiffs vigorously insist that the defendants are not entitled to collaterally attack that proceeding, it clearly falls within the category of void judgments which can be impeached at any time.

It is a fundamental requirement in an action to quiet title or in an action to remove a cloud from a title that the plaintiff must recover on the strength of his own title, although it is not required that a perfect title be established. In this case the plaintiffs base their claim entirely upon the Lloyd Reynolds trustee *de bonis non* proceeding, which we have determined to be void. Under the circumstances, the decree of the circuit court of Saline County must be reversed and the cause remanded to that court, with directions to enter a decree for the defendants-appellants, in accordance with the counterclaim.

*Reversed and remanded, with directions.*