(No. 37679.—

CECIL BAKER *et al.,* Appellees, *vs.* RICHARD C. COLLINS *et al.,* Appellants.

*Opinion filed November 26, 1963.*

CRAIG & CRAIG, of Mt. Vernon, for appellants.

JOHN M. HOLLENBECK, of Marshall, for appellees.

Mr. Justice House delivered the opinion of the court:

This is an action to cancel an oil and gas lease on the ground that the lease was not sufficiently developed. Defendants, Richard C. Collins and his assignees appeal from a decree of the circuit court of Clark County in favor of the plaintiffs-lessors cancelling the lease as to the whole 210-acre leased tract except one 20-acre location upon which a producing well is located.

The lease was dated August 9, 1941, and was for a primary term of 5 years and as long thereafter as oil or gas was produced therefrom. On the last day of the primary term the original lessors executed a 60-day extension agreement and well No. 1 was drilled within the extended term. Upon discovery that the original lessor had only a life estate in part of the land, the remaindermen ratified the lease on February 7, 1949. Following a dispute between the parties, an agreement was entered into on November 29, 1949. It provided, *inter alia,* for payment of salt-water damage, for cleaning out the well in an effort to make it commercially productive, that the lessees drill a second well by May 1, 1950, and, if both wells should be nonproductive, commence a third well within 30 days.

Thereafter the salt-water damages were paid; well No. 1 was cleaned out and produced oil until 1953; well No. 2 was drilled in May, 1950, and produced only one tank of oil before abandonment in 1951; well No. 3 was completed in the fall of 1950 and is still producing about ½ barrel per day; and well No. 4, drilled in the summer of 1961 on a "farm out" of 40 acres, was not commercially productive and was abandoned as a dry hole. Lessees expended about $40,000 on development of the lease, exclusive of the cost of the "farm out" well, and according to the original lessee they have realized very little on their investment after paying costs of operation.

Lessee, Richard C. Collins, testified that they have been studying the possibility of further recovery by waterflood-

ing. He said that they were of the opinion that it might be worth some core drilling but did not elaborate because of the highly competitive nature of the oil business and the presence of competitors in the courtroom. He also testified as to the possibility of drilling or helping to have drilled a deeper test sometime in the future. This evidence negates an express intention to abandon exploration on the balance of the leased premises.

The plaintiffs state that the chief basis for their suit is the failure on the part of the defendants to comply with the terms of paragraph 5 of the agreement of November 29, 1949. This paragraph provides that "Subsequent to May 1, 1950, operators agree to comply with the law and the implied covenants of the oil and gas lease as to additional development, and upon breach of this paragraph agree to surrender without delay all of the lease affected by such breach." Specifically, it is alleged that the implied covenant for further development of the lease, as well as the express covenant of the agreement for further development, was breached by the defendants.

Thus, this is not a case involving failure to drill offset wells. One of the plaintiffs testified that he thought that the lessors were entitled to an offset to a well in the adjoining Schick land but that is not alleged in the complaint nor contended in plaintiffs' theory of the case. Their action is predicated upon the failure to develop the lease by drilling further wells.

After the discovery of oil and gas in paying quantities, the law, to accomplish the manifest intention of the parties, implies a duty on the part of the lessee to reasonably develop the premises, particularly where the principal consideration for the lease is royalty to be paid to the lessor. (*Elliott* v. *Pure Oil Co.* 10 Ill.2d 146; *Daughetee* v. *Ohio Oil Co.* 263 Ill. 518; 2 Summers Oil and Gas, § 398.) The implied obligation of the lessee to further develop has been held to im-

pose upon him the duty to act as would "an ordinary prudent person engaged in like business" (*Daughetee* v. *Ohio Oil Co.* 263 Ill. 518, 524), having regard to the interests of both the lessor and lessee. (*Elliott* v. *Pure Oil Co.* 10 Ill.2d 146, 152.) Numerous factors must, of course, be taken into account to determine whether the lessee has fulfilled his duty to act as a prudent operator. (See Merrill, Covenants Employed in Oil and Gas Leases, 2d ed., par. 123, and 2 Summers Oil and Gas, 2d ed. § 414, for an enumeration of some of the factors that have been considered by the courts.) Of prime importance, however, is the factor of probable profitability of the performance for which the lessor is contending.

In *Elliott* v. *Pure Oil Co.* 10 Ill.2d 146, 152, we stated that there is an implied obligation "on the part of the lessee to use reasonable diligence to develop the demised premises so long as the enterprise could be carried on at a profit." In applying the standard of the "ordinary prudent operator" other courts have generally held that a lessee is not required to engage in future development where he has already made heavy expenditures and it appears that additional wells would not be profitable. 2 Summers Oil and Gas, 2d ed., § 414; Merrill, Covenants Implied in Oil and Gas Leases, 2d ed., § 122.

There are, nevertheless, some cases in other jurisdictions in which the probable profitability of further development has not been the decisive measure of the lessee's duty and leases have been cancelled as to the undeveloped premises covered by the lease where there has been an unreasonable delay by the lessee to further explore or develop the premises. (See cases collected in Annotation 79 A.L.R. 2d 792; 2 Summers Oil and Gas, 2d ed., § 414, n. 31.1; Merrill, Covenants Implied in Oil and Gas Leases, 1959 Pocket Supp., § 145.) In most of those cases finding the delay to be unreasonable the delay amounted to 10 years or more, or if

shorter, was coupled with other circumstances such as an expressed intent by the lessee to make no further exploration.

It is apparent that the trial judge based his decision in this case upon unreasonable delay. In a memorandum opinion, he stated, "if after twenty years time, the defendants are unable to give the plaintiffs even a hope that defendants would with reasonable diligence drill further wells, it would scarcely seem fair that the owners should be deprived of procuring further development through other sources." The record does not, however, support this conclusion.

The obligation to reasonably develop the premises did not arise until after discovery of oil and gas in paying quantities, which was after August, 1946. (2 Summers Oil and Gas, 2d ed. § 398.) Thereafter, a dispute arose between the parties which was resolved by the agreement of November 29, 1949. Two wells were drilled in 1950 pursuant to the agreement and in 1961 a fourth well was drilled. There was some show of oil in the 1961 well but apparently pipe was not set because it would not have been commercially productive. Shortly after this well had been abandoned as a dry hole the plaintiffs filed suit to have the lease cancelled.

It is unnecessary for us to decide in this case whether we would hold that cancellation of a lease could be based solely on an unreasonable delay without regard to the probable profitability of further drilling. The delay of 11 years from 1950 to 1961 became immaterial when the defendants through a "farm out" did further explore and develop the leased premises without objection from, and apparently at the insistence of, the plaintiffs. If this well had been a producer, undoubtedly this action would not have been filed. We do not believe that a lessor can in equity and good conscience permit a further exploratory well to be drilled under the original lease and then after the exploratory well proves to be a dry hole ask that the lease be cancelled as to the undeveloped portion covered by the lease because of an al-

legedly unreasonable delay on the part of the lessee in the past.

Plaintiffs seek the equitable remedy of cancellation of the lease, presumably on the ground that they are prevented from leasing to other operators and thereby lose bonuses or rentals or possible royalties from further development of the acreage. Their only testimony to establish hardship is the vague statement of Bessie Gallatin, one of the plaintiffs, that "people" had called upon her and her sister to lease. The only prospective lessee named by her was her brother-in-law, Grant Gallatin, and she stated that one or two others had tried but that it had been "sometime back". There was no evidence of terms offered or promises to drill. This contrasts with the action of the defendants who have invested a large sum in development in an area which is marginal at best.

In the concluding paragraph of their brief, in addition to referring to the right of protection by offsets which has heretofore been disposed of, plaintiffs claim that well No. 1 was never plugged as provided in the 3rd paragraph of the agreement of November 29, 1949. Again, this was neither alleged in the complaint nor set up on their theory of the case and cannot now be considered.

The circuit court of Clark County erred in cancelling the lease as to any part of the premises and its decree is reversed.

*Decree reversed.*