SHUBRICK T. KOTHE, Ex'r of the Will of Vera A. Shaw, Deceased, Plaintiff-Appellee, *v.* MARY ANNA JEFFERSON a/k/a Mary Ann Jefferson, Indiv. and as Ex'r of the Will of John H. Jefferson, Deceased, *et al.*, Defendants-Appellants.

Fourth District   No. 17281

Opinion filed September 21, 1982.—Rehearing denied October 18, 1982.

TRAPP, J., dissenting.

Thomas J. Logue, of Glenn & Logue, of Mattoon, for appellant John H. Ryan.

Ward E. Dillavou, of Dillavou, Overaker & Smith, of Paris, for other appellants.

William F. Meehling, of Meehling & Rich, of Marshall, for appellee.

JUSTICE LONDRIGAN delivered the opinion of the court:

Vera Shaw leased 11 parcels of land, 438.5 acres in all, to John H. Jefferson, February 19, 1959, for the production of oil and gas. Shaw filed a complaint in 1980 seeking to cancel the lease as it applied to 318.5 acres of the leasehold for breach of the implied warranty to develop; she later moved for summary judgment with respect to 120 of the 318.5 acres. The trial judge granted the motion; this appeal has been brought by persons who assert various interests in the 120 acres. Shaw died while the case was pending below, and the executor of her estate was substituted as plaintiff.

The Shaw-Jefferson lease describes 11 parcels of land; the motion for summary judgment, the subject of this appeal, concerns portions of one parcel, specifically the northeast quarter of the northeast quarter and the south half of the northeast quarter of section 4, township 11 north, range 14 west, Clark County ("the summary judgment land"). The 40 acres composing the northwest quarter of the northeast quarter of section 4—11—14 are among the 120 acres in the leasehold that the complaint does not seek to affect. The lease specifies a primary term of three years and is to remain in effect for as long as oil, gas, or casing-head gas is produced or oil or gas wells are drilled; the lease contains several provisions regarding its continuation

by alternative methods such as payments of cash. The lease gives Shaw a one-eighth royalty. Reserving an overriding royalty, John H. Jefferson and his wife, Mary Ann(a), assigned their interest in the northeast quarter of section 4 to J.L. Cowan May 4, 1964.

The plaintiff filed a request for admission of facts regarding assignments made by Cowan of the summary judgment land. The request specifies 21 assignments totalling at least 67/64 fractional working interests of the northeast quarter of the northeast quarter; the interests of two assignees are not specified. The earliest assignment occurred August 17, 1964, and the latest December 14, 1966. The request lists 22 assignments of 50/64 fractional working interests of the south half of the northeast quarter. The earliest of these assignments occurred May 19, 1964, and the latest was on July 23, 1964; half the assignments are not dated. The request also asserts that none of the named assignees have working interests in any other portions of the 438.5-acre leasehold. The plaintiff filed the request September 19, 1980, and because none of the defendants denied or objected to the assertions, they stand admitted under Supreme Court Rule 216(c) (87 Ill. 2d R. 216(c)).

The plaintiff named as defendants in this action "all those who have or may claim a record interest in" the 318.5 acres that the complaint would affect; no one argues that a necessary party has not been joined. The trial court entered four default orders; Jefferson's assignee, J.L. Cowan, died in 1967, and Cowan's heirs and assigns were among the casualties of the defaults. None of the defaulted defendants have appealed. The only defendants asserting an interest in the summary judgment land who survived the defaults are the Jefferson heirs: Mary Ann(a) Jefferson, the widow of John H. Jefferson; Pamela Baker Jefferson Powell, the widow of Mary Ann(a) and John H.'s son William T.; and Stewart Jefferson Powell and Elliott Jefferson Powell, the two children of Pamela and William T. John H. Ryan was added as a defendant on the plaintiff's motion. The Jefferson heirs argue that when Cowan and his assignees failed to develop the land, the working interest reverted to them, which they assigned to Ryan, March 20, 1980, reserving an overriding royalty. Ryan was also assigned their interests, whatever they may be, to seven other parcels listed in the 1959 Shaw-Jefferson lease.

Armed with the default orders and the admitted facts, the plaintiff later moved to cancel the lease with respect to all owners of working interests in the summary judgment land and for summary judgment against the nondefaulting defendants. The plaintiff argued that all those who could assert working interests—namely the Cowan

heirs and assigns—had been defaulted and that the nondefaulting defendants had only overriding royalty interests, which cannot exist unless linked to a working interest. The trial judge allowed the motion, cancelling the lease on the 120 acres and granting the plaintiff summary judgment against the defendants.

■■ ■ The defendants' major contention on appeal is that an oil and gas lease cannot be cancelled with respect to one portion of the leasehold for breach of the implied covenant to develop if other portions of the leasehold have been developed. The plaintiff seeks in effect to divide the implied covenant of development, for the complaint requests cancellation of the lease on only part of the leasehold: 318.5 of the 438.5 acres. A review of the authorities shows that implied covenants in an oil and gas lease should be construed as indivisible unless the lease contains a clause making them divisible.

The leasehold here contains more than one tract, and ownership has been splintered through assignments. The question becomes whether development of some tracts, which the complaint acknowledges, serves as compliance with that covenant on all other tracts; a covenant is indivisible when compliance on one tract is compliance on all, and divisible when compliance is required on each separate tract (R. Hemingway, The Law of Oil and Gas sec. 9.10 (1971)). The better view holds that all covenants in an oil and gas lease are indivisible unless the lease expressly provides otherwise. (3 Summers, The Law of Oil and Gas secs. 513, 516 (1958), citing, among other cases, *Worrell v. Parsons* (1928), 133 Okla. 61, 271 P. 155, and *Hughes v. Cordell* (1927), 174 Ark. 757, 296 S.W. 735.) Summers criticizes *Standard Oil Co. v. Giller* (1931), 183 Ark. 776, 38 S.W.2d 766, the major decision holding that covenants are divisible, for misreading the cases that it cites as ostensible support. The *Giller* court was aware of its earlier decision in *Hughes*, for it cited *Hughes*, but only for a different point and not in its discussion of the interpretation of covenants. Two reasons support the conclusion that covenants are indivisible in the absence of a contrary provision in the lease: conservation of resources—recovery of oil and gas is maximized when wells are placed far apart and extraction is done slowly—and the parties' expectations. 3 Summers, The Law of Oil and Gas sec. 516 (1958).

An analogous case, *Dickerson v. Ray* (1960), 20 Ill. 2d 107, 169 N.E.2d 341, supports this result; *Dickerson* was a suit brought to enforce rights under the habendum clause in a mineral deed. The deed had been executed by the separate owners of two tracts of land, the "north forty" and the "south forty," and had given the grantee, the plaintiffs' predecessor in interest, an undivided one-half interest in oil

and gas under the two tracts for a set term and after that for as long as oil or gas was produced. Drilling rights were leased, and sometime after the expiration of the primary term of the deed, production ceased on the north forty; production later resumed on that tract under a different lessee. The plaintiffs asserted an interest in both tracts under the mineral deed, but the defendants argued that the cessation of production on the north forty had terminated the plaintiffs' rights under the deed in that tract. The court held that production on either tract continued the plaintiffs' undivided interest in both, and the plaintiffs were therefore entitled to their share of the proceeds from the resumed production in the north forty. Although the court did not expressly discuss divisibility, it held in effect that the habendum clause was indivisible. The defendants argued that diversity of ownership of the two tracts required that each be treated separately, but the court rejected that, saying:

> "Arising first in decisions relating to oil-and-gas leases, it is the rule of the vast majority that where a number of land owners demise their lands in a single lease, whether contiguous or not, and provide that after a designated period the interest covered by the said instrument will continue for as long as there is production upon said land, production which is sufficient to continue the interest as to any of the land described is sufficient to continue the interest as to all of the land described. [Citations.]" (20 Ill. 2d 107, 113-14, 169 N.E.2d 341, 344.)

Later, the court referred to "the rule that production within the primary term on one of the leased tracts extends the term as to all of the tracts." (20 Ill. 2d 107, 117, 169 N.E.2d 341, 346.) The habendum clause therefore was indivisible.

We see no reason to reach the opposite result with an implied covenant. That *Dickerson* involved a mineral deed rather than a lease is of little moment, for in reaching its result the court relied extensively on cases involving oil and gas leases. Another possible distinction is that the diversity of ownership in *Dickerson* was among the grantors of the deed and here is among the owners of the leasehold. Yet this too does not signify, for the divisibility or indivisibility of covenants does not depend on where diversity of ownership lies.

The plaintiff points out that *Elliott v. Pure Oil Co.* (1956), 10 Ill. 2d 146, 139 N.E.2d 295, affirmed the trial court's decree that ordered the lessee of a 20-acre tract to drill a new well within 60 days or risk losing the lease on 10 acres of the tract; the lessee was producing oil on the other 10 acres. The lessee did not argue indivisibility as a bar to the lessor's action, however, and *Elliott* does not discuss it. Also,

the 10 acres in *Elliott* were seriously threatened by drainage from neighboring wells, which has not been shown here. *Baker v. Collins* (1963), 29 Ill. 2d 410, 194 N.E.2d 353, reached the opposite result, but like *Elliott* did not mention divisibility and indivisibility. In *Baker* the landowner leased the oil and mineral rights to 210 acres of land and later won cancellation of the lease on 190 acres; the supreme court reversed. The lease, signed in 1941, had a primary term of five years and was to remain in effect as long as oil or gas was produced. In 1949 the parties agreed that the lessee could drill several more wells in the next few years; one of these was producing a half barrel of oil per day at the time of the trial. In 1961 another well was drilled under a farm out. The court based its decision on the lessor's acquiescence in the lessee's sporadic drilling activity rather than on the theory that covenants are indivisible. Therefore, the reasoning of *Dickerson* rather than the results of *Baker* and *Elliott* must guide us here.

■■ The plaintiff argues that the attack on the sufficiency of the complaint came too late in the proceedings below and therefore was waived. The defendants questioned the sufficiency of the complaint in opposing the motion for summary judgment, but the trial judge considered the issue waived because they had answered the complaint rather than attack it by motion. We conclude, however, that the defendants adequately raised the question of partial development and indivisibility, for in response to the motion for summary judgment they submitted counteraffidavits showing development of portions of the leasehold. The defendants' argument may also be interpreted as affirmative matter that bars the action (*Brewer v. Stovall* (1977), 54 Ill. App. 3d 261, 369 N.E.2d 365). Although such a defense is better presented by motion for dismissal under section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(9)) or by motion for summary judgment, we iterate that the plaintiff received adequate notice of this argument. The trial court therefore erred in holding that the issue had been waived.

Given our decision on the question of partial development and the implied covenant to develop, we need not consider the defendants' remaining arguments.

■■ ■ Although this disposition may leave in doubt the ownership of the leasehold on the summary judgment land, a plaintiff seeking to quiet title "must recover on the strength of his own title" (*Reynolds v. Burns* (1960), 20 Ill. 2d 179, 193, 170 N.E.2d 122, 130). The default orders entered against the Cowan heirs and assignees did not operate as an admission by the defendants of the complaint's legal sufficiency.

(*Chamblin v. Chamblin* (1936), 362 Ill. 588, 1 N.E.2d 73.) We therefore reverse the judgment of the trial court.

Reversed.

WEBBER, J., concurs.

JUSTICE TRAPP, dissenting:

The complaint was filed on January 14, 1980. Service by publication upon the defendants, as nonresidents who claim as heirs of the initial lessee, John Jefferson, was begun January 19, 1980. The clerk of court certifies that he mailed copies of such notice to the Jeffersons at stated addresses on January 28, 1980.

The defendant, Ryan, who claims as assignee of the heirs of John Jefferson procured such assignment on March 20, 1980.

Jefferson became a lessee of decedent Shaw on February 19, 1959. On May 4, 1964, Cowan became an assignee of Jefferson as to the land at issue. Cowan died in December 1967. Jefferson died in April 1973.

Despite the innumerable assignments made by Cowan to many persons, defendants allege a reversionary interest passing through the Jefferson heirs who assert that there were oral covenants to develop the assigned lease, so that an interest reverted to Jefferson when Cowan and his assignees failed to develop the leasehold. Nothing in the records suggests that any such claim was asserted in any way by the Jeffersons against Cowan from his death in 1967 until March 20, 1980, after the filing of this complaint, a span of some 12 years.

Assuming, arguendo, that the majority opinion is correct in holding that a development of a portion of the lease is sufficient to bar cancellation of the lease, the reversionary interest alleged to be in Jefferson and Ryan is either bound by the same rule of indivisibility so that the so-called reversion in Jefferson and Ryan cannot operate in their favor while there is production on a remote parcel, or there is, in fact, a failure by the assignees of the working interest to develop oil and gas by reasonable efforts so that the lease should be deemed abandoned and the judgment in favor of the decedent affirmed.

So far as the affidavits filed show, 36½ barrels of oil have been produced since February 1959, on all of the land originally leased to Jefferson. As to the 120 acres at issue, no attempt has been made to drill in some 21 years. From August 1967 until February 1977, no well was drilled on any of the land in the original lease. The majority

opinion asserts that the application of the rule of indivisibility maximizes the recovery of oil and gas and permits the conservation of resources. Upon the facts here the magic of the rule achieves farce.

As the trial court pointed out, Jefferson saw fit to divide the working interest by his assignment to Cowan. The latter, in turn, so assigned the interest to so many individuals that it is reasonable to conclude that it would be impossible to effectively develop the interests.

The majority concludes that the result is mandated by the opinion in *Dickerson v. Ray* (1960), 20 Ill. 2d 107, 169 N.E.2d 341. In that case, separate owners saw fit to join their respective tracts in one lease, and the opinion found that the language of the lease conclusively showed that the several tracts were treated as a single entity by the respective owners. Under such circumstances, it could be fairly said that the owners should not be permitted to claim that the several tracts were separate and distinct with the end to establish a termination of the lease for non-production.

The reason and justice of that rule are not apparent here, for the lessee has divided the working interest in a single parcel by making partial assignments. He has insulated himself from duties under express and implied covenants of the lease as to the assigned interests. The lessee's assignees, who theoretically have assumed express and implied covenants of the lease, are, in turn, insulated from any obligations by reason of the theory adopted here. The law should not permit such manipulation to the detriment of others.

Our judgment, which here merely reverses, preserves untouched an immeasurable uncertainty upon the rights as to the 120 acres which began in 1964 in the assignment of Jefferson, and which presumably will continue to exist without a foreseeable end.

It is an egregious fault to apply the doctrine of the indivisibility of the lease to support the gross manipulation by the lessee and the assigns of the lessee. I would affirm the trial court.